UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **LEWIS WAYNE GYLES** | * | **CIVIL ACTION NO.  10-1768** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT & RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Lewis W. Gyles protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on May 21, 2008.  *See* Tr. 21, 63-65 .  He alleged disability as of December 28, 2005, because of "back problems."  (Tr. 94).  (Tr. 80, 84).  The claims were denied at the initial stage of the administrative process.  (Tr. 46-51, 272).  Thereafter, Gyles requested and received a February 5, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 273-299).  However, in an August 28, 2009, written decision, the ALJ determined that Gyles was not disabled under the Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 17-27).  Gyles appealed the adverse decision

to the Appeals Council. On September 27, 2010, however, the Appeals Council denied Gyles' request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On November 29, 2010, Gyles sought review before this court. Succinctly stated, he contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

      The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Gyles did not engage in substantial gainful activity during the relevant period. (Tr. 22). At step two, he found that he suffers from degenerative disc disease of the lumbar spine – a severe impairment. *Id*. He concluded, however, that the impairment(s) was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 24).

### II. Residual Functional Capacity

The ALJ next determined that Gyles retains the residual functional capacity to perform light work, reduced by the ability to only occasionally: climb (but no ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl, plus the need to avoid heights and dangerous moving machinery. (Tr. 24).[1] Plaintiff contends that the ALJ's residual functional capacity

---

[1] Light work entails:
. . . lifting no more than 20 pounds at a time with frequent lifting or

assessment is not supported by substantial evidence. The court agrees.

At the administrative hearing in this matter, plaintiff conceded that his only problem at that time was with his lower back. (Tr. 281). Moreover, treatment records from the Veterans Administration ("VA") support his complaints of low back pain. For instance, on July 2, 2007, Gyles was diagnosed with low back pain, chronic obstructive pulmonary disease, and obesity. (Tr. 159-160). On July 9, 2007, Gyles returned to the clinic requesting more treatment for his intermittent lower back pain. (Tr. 160-161).

A January 30, 2008, progress note states that Gyles went to the VA clinic with complaints of low back pain flare-up. (Tr. 151-153). Gyles reported that the pain radiated to both legs, and his calves felt tight. *Id*. He described his intermittent pain as a six on a ten point scale. (Tr. 152). His pain was aggravated by standing or walking. *Id*. He also reported left shoulder pain and dyspnea upon exertion. *Id*.

A February 13, 2008, MRI of the lumbar spine showed, *inter alia*,

> prominent extradural fat posterolaterally from L1-2 through L5-S1 and anteriorly at L4 and L5. There is resultant crowding of the cauda equina nerve roots. Diffuse disc bulge is seen at L4-5 and diffuse disc bulge with posterior central disc extrusion is seen at L5-S1. These are seen causing impression on the anterior thecal sac and neuroforamina narrowing at disc level. There are bilateral facet degenerative changes L4-5 and L5-S1. Compression on the existing nerve roots at

---

carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

L4-5 and L5-S1 is not excluded.  Conus medullaris appeared normal. (Tr. 204-205).

On March 7, 2008, Dr. Chittaboinia reviewed the MRI and opined that there was no major lumbar disc herniation or spinal stenosis.  (Tr. 235).  Chittaboinia recommended conservative care.  *Id*.

On July 31, 2008, Gyles was evaluated by the VA physical therapy department for his low back pain.  (Tr. 232-233).  Gyles reported that he was not receptive to surgical intervention, but wanted pain management at a non-narcotic level.  (Tr. 232-233).  The therapist administered transcutaneous electrical nerve stimulation ("TENS"), and achieved significant reduction in Gyles' reported pain.  *Id*.  (pain was reduced from four to one on a ten point scale).  *Id*.  Accordingly, the VA issued Gyles a TENS unit for home use.  *Id*.

An August 1, 2008, consultation request from Gyles' primary care physician noted a provisional diagnosis of low back pain, with pain radiating bilaterally into the lower extremities.  (Tr. 234-235).  However, he demonstrated no motor or reflex deficits.  *Id*.

On January 23, 2009, Gyles underwent a functional capacity evaluation administered by physical therapist, Steve Allison.  (Tr. 260-268).  Physical examination revealed objective clinical evidence of impaired lumbar spine range of motion and moderate joint crepitance at both knees.  *Id*.  Gyles' pain level ranged from a 5-7 on a 10 point scale.  *Id*.  He demonstrated 0 of 5 Waddell's non-organic physical signs with regard to his low back pain.  *Id*.  The pain questionnaires completed by Gyles indicated a moderate-perceived disability.  *Id*.  Allison concluded that Gyles was capable of work at the restricted-medium level.  *Id*.  He could occasionally lift up to 35 pounds and frequently lift 15 pounds.  *Id*.  Allison stated that Gyles could frequently sit, stand, and/or walk but needed to change up these activities for 20 minutes per hour.  *Id*.  Gyles' postural activities were limited to occasional.  *Id*.  Allison concluded that he

thought it would be difficult for Gyles to obtain employment. *Id*.

In his decision, the ALJ rejected Allison's comment regarding Gyles' ability to obtain employment because it did not come from an "acceptable source." For purposes of this lone comment, however, whether Allison is an acceptable source or not ultimately proves irrelevant because even a licensed physician's statement that a claimant is disabled or unable to work is not entitled to any special significance under the regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

More troublesome, however, is the ALJ's apparent rejection of Allison's additional finding that Gyles needed to vary his activities for 20 minutes per hour, at least, in part, because Allison was not an "acceptable source" under the regulations. While physical therapists and chiropractors are not considered "acceptable" medical sources under the regulations, and therefore, cannot establish the *existence of a medically determinable impairment*, the Commissioner still may use evidence from these sources to assess the severity of an impairment and how it affects the claimant's ability to work. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, the ALJ is required to consider evidence from "other sources"when evaluating an "acceptable medical source's" opinion.   SSR 06-03p.

Although Social Security Rulings are not binding on the federal courts, they are "binding on all components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). If an agency violates its own rules, with resulting prejudice, then the underlying  proceedings are tainted,  and any resulting actions cannot stand. *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*,  837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if

such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). Here, such doubt exists because appropriate consideration of the assessment by the physical therapist as an "other source," may well have compelled the ALJ to assign more weight to Allison's findings.

Relevant to this discussion is the ALJ's additional rationale for discounting the limitations recognized by Allison, i.e. that they were "inconsistent with the objective evidence–normal gait, no neurological abnormalities and no current evidence of major lumbar disc herniation, spinal stenosis or surgical lesions." (Tr. 23).[2] However, diagnostic testing, i.e., an MRI, confirmed that Gyles' nerve roots were crowded, with a bulging disc, and degenerative changes. (Tr. 204-205).

The instant record uniformly establishes that plaintiff's impairment is not severe enough to limit all activity. Nevertheless, the issue is whether, and to what extent the condition affects his functional capacity. The sole medical professional of record to assess the effects of plaintiff's impairment was the physical therapist, Steve Allison, who found that Gyles was capable of medium work – so long as he altered his routine for 20 minutes each hour. Whether or how this limitation is inconsistent with the diagnostic medical tests and objective medical findings is neither explained by the ALJ, nor otherwise apparent to the court.

The ALJ further attempted to rationalize his residual functional capacity assessment with testimony by plaintiff that he typically walks his son two and one-half blocks to the bus stop, then converses with a friend, before returning home to clean and cook before meeting his son at the bus stop after school. (Tr. 24). Plaintiff explained, however, that the bus stop was only about

---

[2] The ALJ also emphasized that plaintiff only took Ibuprofen and aspirin for his pain. (Tr. 24). However, the VA prescribed plaintiff a TENS unit, which he uses at home for one-two hours at a time, twice per day. (Tr. 112).

one hundred and fifty yards from his home, and that he would sit and talk to his friend there before making the return trek. (Tr. 285-286). Plaintiff further testified that he could stand, walk, and/or sit for about 45-50 minutes at a time, before needing to alternate positions. (Tr. 283). In short, plaintiff's testimony is consistent with the postural-change limitation recognized by the physical therapist – and does not support the ALJ's residual functional capacity assessment.

Even if the ALJ had provided valid reasons for discounting the limitations recognized by the physical therapist, the record remains devoid of any opinion by an acceptable medical source, e.g., a consultative physician. In fact, at the hearing, the ALJ stated that he intended to send Gyles for an orthopedic examination because there was no consultative examination in the file. (Tr. 298). Nevertheless, there is no indication that the ALJ ever followed through with this proposed course of action. Instead, he appears to have autonomously derived plaintiff's residual functional capacity. However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment);[3] *Butler v. Barnhart*, Case Number 03-31052

---

[3] In *Ripley*, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Ripley, supra*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

(5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

### III.   Step Five and Remand

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the relevant period also is not supported by substantial evidence.

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. At a minimum, the effects of plaintiff's degenerative disc disease remain indeterminate. Upon remand, it may prove necessary to consult an orthopedist who can examine plaintiff and issue a medical source statement addressing the limitations imposed by plaintiff's back impairment, including his professed need to alter his activities on an hourly basis.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED, in chambers, at Monroe, Louisiana, this 6th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE